IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>HASAN ALI HASAN,<br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 05-CR-174-JHP |

**ORDER**

Now before the Court is the Government's Motion in Limine regarding the testimony of Gene Halleck, Ph.D. ("Halleck"). Plaintiff seeks exclusion of Halleck's testimony on the grounds that her opinions do not meet the requirements set forth in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). Specifically, the government contends Halleck's

> testing and methods do not "fit" a forensic case, as the tests and methodology have not been validated for forensic use, they have not been found to be reliable in a setting wherein the Defendant who was tested is motivated to malinger, no error rates have been established for forensic use, and there exists no peer review of the use of such tests outside of academia.

Therefore, the government requests this court exclude Halleck's report and testimony from the trial in this matter.

It is now well established that Fed.R.Evid. 702 imposes on a district court a gatekeeper obligation to "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993). This gatekeeper function requires the judge to assess the reasoning and methodology underlying the expert's opinion, and determine whether it is both scientifically valid and applicable to a particular set of facts. *Id.*, at 592-93. The Supreme Court has made clear that "where [expert] testimony's factual basis, data, principles, methods, or their application are called sufficiently into question . . . the trial judge must determine whether the testimony has a 'reliable basis in the knowledge and experience of [the relevant] discipline.'" *Kumho Tire Co. V. Carmichael*, 526 U.S. 137, 149 (1999)(quoting *Daubert*, 509 U.S. at 592).

To be reliable under *Daubert*, an expert's scientific testimony must be based on scientific knowledge, which "implies a grounding in the methods and procedures of science" based on actual knowledge, not "subjective belief or unsupported speculation." 509 U.S. at 590. In other words, "an inference or assertion must be derived by the scientific method . . . [and] must be supported by appropriate validation – i.e. 'good grounds,' based on what is known." *Id*. While expert opinions "must be based on facts which enable [the expert] to express a reasonably accurate conclusion as opposed to conjecture or speculation, . . . absolute certainty is not required."

*Gomez v. Martin Marietta Corp.*, 50 F.3d 1511, 1519 (10th Cir. 1995) (quotation omitted). The proponent of an expert "need not prove that the expert is undisputably correct or that the expert's theory is 'generally accepted' in the scientific community." *Mitchell v. Gencorp Inc.*, 165 F.3d 778, 781 (10th Cir. 1999). Instead, the proponent must show that the method employed by the expert in reaching the conclusion is scientifically sound and that the opinion is based on facts which satisfy Rule 702's reliability requirements. *Id.*

To assist in the assessment of reliability, the Supreme Court has identified four nonexclusive factors that the trial court may consider: (1) whether the opinion at issue is susceptible to testing; (2) whether the opinion has been subjected to peer review; (3) whether there is a known or potential rate of error associated with the methodology used and whether there are standards controlling the technique's operation; and (4) whether the theory has been accepted in the scientific community. *Daubert*, 509 U.S. at 593-94. These factors are not exclusive and district courts applying *Daubert* have broad discretion to consider a variety of other factors. *Kumho Tire,* 526 U.S. at 150. ("[W]e can neither rule out, nor rule in, for all cases and for all time the applicability of the factors mentioned in *Daubert* . . . Too much depends upon the particular circumstances of the particular case at issue.").

Generally, the district court should focus on an expert's methodology rather than the conclusions it generates. *Daubert*, 509 U.S. at 595. However, an expert's conclusions are not immune from scrutiny: "A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." *General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) ("[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence which is connected to existing data only by the *ipse dixit* of the expert."). Under *Daubert*, "any step that renders the analysis unreliable . . . renders the expert's testimony inadmissible. This is true whether the step completely changes a reliable methodology or merely misapplies that methodology." *Mitchell*, 165 F.3d 15 782 (quoting *In re Paoli RR. Yard PCB Litigation*, 35 F.3d 717, 745 (3rd Cir. 1994). It is critical that the district court determine "whether the evidence is genuinely scientific, as distinct from being unscientific speculation offered by a genuine scientist." *Id.*, at 783 (quoting *Rosen v. Ciba-Geigy Corp.*, 78 F.3d 316, 318 (7th Cir. 1996). Regardless of the specific factors at issue, the purpose of the *Daubert* inquiry is always "to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire*, 526 U.S., at 152.

This Court conducted a hearing on February 23, 2006, relating to the Defendant's Motion for Court-Appointed Interpreter. The substance of defendant's evidence on this motion was the testimony of Halleck. At the time of said hearing, the government contested Halleck's testimony based on *Daubert*. Following the conclusion of that hearing and consideration of the post-hearing briefs of counsel, based upon the fact the defendant had not, pursuant to Fed.R.Cr.Proc. 16, provided notice to the government that they intended to use Halleck as an expert witness at the time of trial nor had they provided a written summary of Halleck's testimony, this Court declined to rule on the government's *Daubert* challenge. On March 7, 2006, the defense provided notice to the government they intend to elicit the opinion, given at the February 23 hearing from Halleck during trial. *See*, Docket No. 48. Additionally, the defense provided the government with a Report prepared by Halleck on April 3, 2006. *See*, Docket No. 78. In light of the previous testimony of Halleck, as well as a review of Halleck's report, this Court finds Halleck's testimony may not be admitted during the trial of this matter. Defendant's expert is an Associate Professor at Oklahoma State University. In this position, Halleck is the director of the International Teaching Assistant program and works as an applied linguist. In this position, Halleck tests international teaching assistants. Halleck's speciality is in first language acquisition, *i.e.*, how individuals acquire a native language and how people

learn another language after they have acquired a first language. Halleck is certified as a oral proficiency tester by the American Council on the Teachers of Foreign Languages, "ACTFL." The government does not contest Halleck's qualifications as an expert in linguistics and oral proficiency interviews and examinations, but argues instead the testing methods are unreliable and not designed for forensic use. Further, the government argues there have been no studies establishing the value for forensic use and no known error rates when used forensically to assess or ferret out when a person is malingering or purposefully attempting to appear deficient.

Halleck was initially retained by the defendant to give an opinion regarding whether the defendant needed a translator. Since the time of her prior testimony, Halleck has performed two additional tests on the defendant.[1] The purpose of Halleck's testing was to evaluate the defendant's "oral proficiency." Halleck indicates she attempted to ascertain if it was possible that the defendant "could have been pretending to have less language than he really did." In addition to testing the defendant, Halleck's analysis "also focused on cultural issues that needed to be taken into consideration when attempting to judge the veracity of the speaker."

[1] Defendant was given three different oral language tests: Ordinates SET-10 (a ten-minute test administered by phone), the ACTFL/ETS/ILR Oral Proficiency Interview (OPI) (an face-to-face interview lasting approximately 30 minutes) and the ETS SPEAK Test (generally used for "employment, graduate asssistantships, licensure, and certification purposes).

Halleck testified that the ACTFL-OPI test was not adapted for forensic use; rather, it was adapted for academia. Additionally, Halleck was unaware of any studies which would validate the test for use in a forensic setting. Halleck was the only person interviewing and/or scoring the defendant on the ACTFL-OPI test.[2] Further, since the test is generally used on people who want to score as high as they possibly can, the test is not designed to determine if an individual is purposefully attempting to score lower than their actual abilities. Halleck admits in her written report that "we can't know for sure whether someone is pretending or not . . ." (Docket No. 78-2 at p. 13).[3] Another concern regarding Halleck's testimony is that the schools in Somalia were apparently closed when the defendant was ten, so the defendant's formal education would have been minimal and the lack of formal education could contribute significantly to the defendant's overall ability to communicate at a high level of fluency in any language. No evidence was presented to ascertain that the defendant's ability to answer the questions posed by Halleck in his native language were any more grammatically correct that his responses in English. Thus, there is simply no way for this Court to determine the reliability of the tests performed on the defendant.

[2]Halleck's report implies that two trained raters scored the SPEAK test. While neither the report or Halleck's testimony indicates how many people rated defendant's SET-10 test, it is interesting to note the defendant did better on the Demo Test than on the actual test taken a few minutes later.

[3]It should be noted that Halleck has numbered her report and her page number is 12. As filed, this page is numbered page 13 of 17.

Accordingly, the Court finds, pursuant to Fed.R.Evid. 702, the Government's Motion in Limine (Docket Nos. 48, 76 and 78) should be granted.

After reviewing the report of Halleck, however, this Court has reconsidered its previous order denying the Defendant's Motion for an Interpreter. While it is clearly a question of fact for the jury whether or not the defendant understood the questions asked during the grand jury proceeding, it is this Court's duty to ensure the Defendant's rights to due process during these proceedings are not infringed. These rights include the right to communicate effectively with counsel, as well as the right to keep up with the conversations occurring within the courtroom. Defense counsel, as an officer of the court, has indicated he is having difficulty communicating with his client. Further, since witnesses have a tendency to speak rapidly when under the stress of the witness stand and attorneys generally speed up their questions as the witnesses' answers become quicker, this Court finds the best way to ensure that the defendant's constitutional rights are protected is to appoint an interpreter.[4] Accordingly, the Court Clerk is directed to locate a Somalian interpreter and have such an interpreter present at all future court proceedings.

[4] *Cf.*, *U.S. v. Sheikh*, 367 F.3d 756 (8th Cir. 2004) (even though defendant's waiver in English of his *Miranda* rights was deemed voluntary, defendant was provided an interpreter for purposes of trial) .

It is so ordered this 12th day of April, 2006.

James H. Payne
United States District Judge
Northern District of Oklahoma